# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued October 21, 2013  Decided December 27, 2013

No. 12-1229

AMERICAN TORT REFORM ASSOCIATION,
PETITIONER

v.

OCCUPATIONAL SAFETY & HEALTH ADMINISTRATION AND
DEPARTMENT OF LABOR,
RESPONDENTS

UNITED STEEL WORKERS LOCAL UNION 4-227, ET AL.,
INTERVENORS

———

On Petition for Review of a Final Rule of the
Occupational Safety & Health Administration

———

*Thomas J. Grever* argued the cause for petitioner. With him on the briefs was *Mark A. Behrens*.

*Jacqueline M. Holmes*, *Harry M. Ng*, *Leslie A. Hulse*, *Robin S. Conrad*, *Rachel L. Brand*, and *Quentin Riegel* were on the brief for *amici curiae* The Chamber of Commerce of the United States of America, et al. in support of petitioner.

*Heather R. Phillips*, Counsel, U.S. Department of Labor, argued the cause for respondents. With her on the brief were *Joseph M. Woodward*, Associate Solicitor, and *Edmund*

*C. Baird* and *Anne R. Ryder*, Attorneys.

*David C. Vladeck* argued the cause for intervenors Change to Win, UAW, and USW. On the brief were *Randy S. Rabinowitz* and *Stephen A. Yokich*.

*Steven H. Wodka* was on the brief for intervenors United Steel Workers Local Union 4-227 in support of respondents.

*Mary Alice McLarty* and *Andre M. Mura* were on the brief for *amicus curiae* American Association of Justice in support of respondents.

Before: GRIFFITH and SRINIVASAN, *Circuit Judges*, and EDWARDS, *Senior Circuit Judge*.

EDWARDS, *Senior Circuit Judge*: The petition for review in this case, filed by the American Tort Reform Association ("ATRA"), challenges revisions made by the Occupational Safety and Health Administration ("OSHA" or "the agency") to the wording of paragraph (a)(2) of OSHA's hazard communication ("HazCom") standard, 29 C.F.R. § 1910.1200. HazCom establishes labeling requirements for chemicals used in the workplace. The disputed changes appear in an introductory paragraph that describes the preemptive scope of HazCom. *Id.* § 1910.1200(a)(2) ("Paragraph (a)(2)"). These changes reflect the agency's view that HazCom preempts state legislative and regulatory requirements, but not state tort claims. *Id.*

ATRA challenges these modifications on two grounds. First, ATRA contests the substance of Paragraph (a)(2), arguing that OSHA exceeded its authority under the Occupational Safety and Health Act ("OSH Act"), 29 U.S.C. §§ 651-678, by purporting to "limit the scope of preemption from that established by Congress." Br. of Pet'r at 40. Second, ATRA contends that OSHA's adoption of the modifications

was procedurally flawed because the agency failed to follow the requirements of notice and comment rulemaking pursuant to the Administrative Procedures Act ("APA"), 5 U.S.C. § 553(b). We can find no merit in ATRA's claims.

The parties agree that OSHA lacks legal authority to determine the preemptive effect of the OSH Act. It is thus clear that Paragraph (a)(2) is not a legislative rule, both because OSHA has no authority to speak with the force of law on preemption and, in addition, because the agency never meant for the disputed paragraph to have this effect. Paragraph (a)(2) is nothing more than an interpretative statement that "advise[s] the public of the agency's construction of the statute[] . . . it administers." *Shalala v. Guernsey Mem'l Hosp.*, 514 U.S. 87, 99 (1995) (quotations omitted). Because Paragraph (a)(2) is merely interpretative, it is not subject to notice and comment rulemaking under the APA, *id.*, and it is not subject to judicial review unless it is relied upon or applied to support an agency action in a particular case, *see* EDWARDS, ELLIOTT, & LEVY, FEDERAL STANDARDS OF REVIEW 161 (2d ed. 2013). In light of the foregoing, ATRA's challenge to Paragraph (a)(2) is unripe for review. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (quotation and citation omitted)).

## I.  BACKGROUND

The OSH Act vests OSHA with authority to promulgate "Occupational Safety and Health Standards," 29 U.S.C. § 655, which are conditions "reasonably necessary or appropriate to provide for safe or healthful places of employment," *id.* § 652(8). The OSH Act is not to be "construed to supersede or in any manner affect any workmen's compensation law or . . . the common law or statutory rights, duties or liabilities of employers and employees . . . with respect to injuries, diseases, or death of employees arising out of, or in the course of

employment." *Id.* § 653(b)(4). The Act also allows states to establish their own workplace regulation in place of OSHA regulations. To do so, states must submit for OSHA's approval a plan demonstrating, among other requirements, that the state will establish safety standards at least as effective as OSHA's, and designate an enforcement agency to administer these rules. *Id.* § 667.

In 1983, OSHA observed that states and localities were adopting an increasing number of "different and potentially conflicting *regulations*" pertaining to the labeling of hazardous chemicals. 48 Fed. Reg. 53,280, 53,283 (Nov. 25, 1983) (emphasis added). OSHA explained that by promulgating a federal standard, it was "in a position to reduce the *regulatory burden* posed by multiple State *laws*." *Id.* at 53,284 (emphasis added). Accordingly, the original Paragraph (a)(2) provided that the HazCom standard "is intended . . . to preempt any state law pertaining to this subject." *Id.* at 53,340. In 1987, OSHA amended Paragraph (a)(2) to provide that the HazCom standard preempts local, as well as state, laws pertaining to hazard communication. 52 Fed. Reg. 31,852, 31,877 (Aug. 24, 1987). In 1994, OSHA amended the substantive requirements of the HazCom standard, and its accompanying discussion states that "product liability concerns separate and apart from any regulatory requirements" will motivate product manufacturers to make certain information available to users. 59 Fed. Reg. 6126, 6161 (Feb. 9, 1994).

In three letters between 1992 and 2007, OSHA voiced the position that its standards do not supersede state tort law. Letter from Dorothy L. Strunk, Acting Assistant Secretary of OSHA, to Senator J. Bennett Johnston (June 9, 1992) ("If an employer has his/her employees exposed to a hazard, then that employer is responsible for their safety under the OSH Act (liability in tort is a matter of state law).");[1] Letter from Joseph A. Dear, Assistant Secretary of OSHA, to Congressman Cass Ballenger (Oct. 23, 1996) ("As a matter of federal law,

therefore, nothing in health or safety standards issued by OSHA under Section 6 of the Act . . . determines the tort remedies available to injured workers. That matter is determined by the laws of the individual states. It is not our role at OSHA either to foster or to foil the efforts of plaintiffs' lawyers in state court proceedings.");[2] Letter from Richard E. Fairfax, Director of Enforcement Programs at OSHA, to Robert M. Sklar (May 14, 2007) ("OSHA cannot determine liability under state workers' compensation law.").[3]

In December 2008, OSHA issued a letter stating that "OSHA believes that the principles of conflict preemption preclude state courts from finding OSHA-required . . . respirators are defective when such respirators comply with [OSHA's certification] requirements." Letter from Thomas M. Stohler, Acting Assistant Secretary of OSHA, to Daniel K. Shipp at 3 (Dec. 31, 2008), *reprinted in* Reply Br. of Pet'r Add. 1. However, in February 2010, OSHA issued another letter rescinding the opinion put forth in the December 2008 letter because "it is not consistent with sound principles of preemption law." Letter from Deborah Greenfield, Acting Deputy Solicitor of OSHA, to Les Weisbrod (Feb. 3, 2010) ("February 2010 Letter").[4] This letter concluded that "neither the OSH Act nor the respirator regulations themselves expressly preempt state tort actions. Nor do they indicate Congressional or agency intent to preempt such actions." *Id.*

In October 2011, responding to an inquiry about the effect of the HazCom standard on state tort law, OSHA referred to the February 2010 letter to explain that "as a general matter the HazCom standard does not preempt state tort failure to warn suits." Letter from Patricia Smith, Solicitor of Labor, to Steven H. Wodka, Esq. (Oct. 18, 2011) ("October 2011 Letter") at 1, *reprinted in* Br. for OSHA and the Dep't of Labor App'x.

On March 26, 2012, OSHA issued a final rule which amended the substantive requirements of the HazCom

standard. During the notice and comment period for this rulemaking, several commentators urged OSHA to modify Paragraph (a)(2) to say that HazCom preempts state tort actions based on inadequate labeling. In the commentary accompanying the final rule OSHA stated that it "declin[ed] these invitations" because, as explained in its October 2011 letter, HazCom "does not preempt state tort failure to warn lawsuits." Thus, OSHA made it clear that, in its view, the OSH Act "explicitly preserves, rather than preempts state tort law." 77 Fed. Reg. 17,574, 17,694 (March 26, 2012) (citing 29 U.S.C. § 653(b)(4); *Lindsey v. Caterpillar, Inc.*, 480 F.3d 202, 209 (3d Cir. 2007); *Pedraza v. Shell Oil Co.*, 942 F.2d 48, 53-54 (1st Cir. 1991)).

Along with the final rule amending the HazCom standard, OSHA modified Paragraph (a)(2), as follows:

> This occupational safety and health standard is intended to address comprehensively the issue of classifying the potential hazards of chemicals, and communicating information concerning hazards and appropriate protective measures to employees, and to preempt any ~~legal requirements~~ **legislative or regulatory enactments** of a state, or political subdivision of a state, pertaining to this subject. . . . Under section 18 of the Act, no state or political subdivision of a state may adopt or enforce~~, through any court or agency,~~ any requirement relating to the issue addressed by this Federal standard, except pursuant to a Federally-approved state plan.

*Id.* at 17,786.

ATRA filed this petition for review to challenge OSHA's modifications of Paragraph (a)(2). In support of its petition, ATRA advances two claims: First, the disputed modifications exceed OSHA's delegated authority under the OSH Act. Second, no modifications can be made to Paragraph (a)(2)

without notice and comment rulemaking under the APA.

## II.   ANALYSIS

As noted at the outset of this opinion, there are several problems with ATRA's petition. First, both sides acknowledge that OSHA lacks legal authority to determine the preemptive effect of the OSH Act. Therefore, Paragraph (a)(2) surely does not carry the force of law on preemption. Indeed, OSHA concedes that it never meant to suggest otherwise when it modified Paragraph (a)(2). The petition for review is thus much ado about nothing.

Second, given that OSHA has no authority to issue authoritative statements on the preemptive effect of the OSH Act, Paragraph (a)(2) is, at most, an interpretative statement that advises the public of the agency's interpretation of the statute. Because Paragraph (a)(2) is nothing more than an interpretative statement, it is not subject to notice and comment rulemaking under the APA; and it is not subject to judicial review unless OSHA relies on the paragraph or purports to apply it in support of an agency action in a particular case.

Finally, it follows from the foregoing that ATRA's challenge to Paragraph (a)(2) is unripe for review.

We will address these considerations in turn.

**A.   *OSHA Has No Authority to Issue Rules Carrying the Force of Law With Respect to the Preemptive Effect of the OSH Act***

When an agency issues an interpretative rule or statement, an interpretative guideline, or a policy statement with respect to a matter that it is not empowered to decide, the interpretative rule, statement, guideline, or policy statement merely informs the public of the agency's views on the subject. *Nat'l Park*

*Hospitality Ass'n v. Dep't of Interior*, 538 U.S. 803, 809 (2003). It does not, however, create "adverse effects of a strictly legal kind" because it cannot "command anyone to do anything or to refrain from doing anything." *Id*. As a result, controversies over such interpretative rules, statements, guidelines, and policy statements typically cannot result in justiciable disputes. *Id*.

This case differs from *National Park Hospitality Association* in that OSHA administers the statute being interpreted. Nonetheless, the reasoning of *National Park Hospitality Association* applies because Paragraph (a)(2) pertains to a matter that OSHA has no legal authority to decide under the OSH Act. Furthermore, it does not matter that OSHA's statement in Paragraph (a)(2) is an interpretative rule, whereas the matter at issue in *National Park Hospitality Association* was a "statement of policy." The reasoning of *National Park Hospitality Association* still applies. "Not much turns on the distinction between policy statements and interpretative rules. The more important question is whether the disputed statement is merely informative or interpretative, or whether it is substantive and thus establishes a binding legal norm that is subject to judicial review." EDWARDS, ELLIOTT, & LEVY, FEDERAL STANDARDS OF REVIEW 162 (2d ed. 2013). Paragraph (a)(2) is not substantive because it pertains to a matter that OSHA has no legal authority to decide under the OSH Act. The same was true with respect to the disputed policy statement in *National Park Hospitality Association*.

The parties here agree that OSHA has no authority to determine the preemptive effect of the OSH Act. Indeed, ATRA argues that "OSHA cannot use its regulations to limit the scope of preemption from that established by Congress. . . . The OSH Act gives OSHA authority only to promulgate national workplace health and safety standards, not to dictate by regulation the scope of preemption." Br. of Pet'r at 40. OSHA does not disagree with this position. Br. for OSHA and

the Dep't of Labor at 46. Therefore, it is uncontested here that Paragraph (a)(2) is nothing more than a "'guideline'" that "advise[s] the public of the agency's construction of the statute it administers." EDWARDS, ELLIOTT, & LEVY, FEDERAL STANDARDS OF REVIEW 160 (2d ed. 2013) (quoting *Guernsey Mem'l Hosp.*, 514 U.S. at 97, 99). "Interpretative rules . . . do not have the force and effect of law; and they are not accorded that weight in the adjudicatory process." *Id.* (citing *Guernsey Mem'l Hosp.*, 514 U.S. at 99).

While ATRA recognizes that OSHA lacks legal authority to define the preemptive scope of the OSH Act, it nonetheless attempts to argue that Paragraph (a)(2) amounts to a legislative rule. First, ATRA claims that Paragraph (a)(2) must have the force of law because it is published in the Federal Register and the Code of Federal Regulations. Reply Br. of Pet'r at 8. But this is not dispositive. In *National Park Service Ass'n*, the disputed agency statement was also published in the Federal Register and the Code of Federal Regulations, 538 U.S. at 806 (quoting 36 C.F.R. § 51.3 (2002)), and the Court nonetheless concluded it was a non-legislative "general statement of policy." *Id.* at 809; *see also* 5 U.S.C. § 552(a)(1)(D) (requiring statements of policy to be published in the Federal Register).

Second, ATRA claims that the 2012 modifications to Paragraph (a)(2) must be legislative because a state court relied on the language to hold that HazCom does not preempt a state failure-to-warn tort. Br. of Pet'r at 42-43; Reply Br. for Pet'r at 9-10. But one state court's decision to credit the agency's view on preemption does not mean that the court was *obligated* to follow it, or that the agency's view is legally binding. OSHA recognizes that courts should not afford Paragraph (a)(2) the "controlling weight" given to agency regulations with the force of law, *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 844 (1984), but instead maintains that its "explanation of state law's impact" on the HazCom standard should be afforded more limited deference that "depends on its

thoroughness, consistency, and persuasiveness." Br. for OSHA and the Dep't of Labor at 43-44 (quoting *Wyeth v. Levine*, 555 U.S. 555, 577 (2009)); *see also United States v. Mead Corp.*, 533 U.S. 218, 228, 234-35 (2001); *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944).

The agency does not assert that Paragraph (a)(2) should be dispositive in any court's determination as to whether HazCom preempts a particular state failure-to-warn tort. Rather, OSHA has consistently relied on judicial decisions that have independently reached the position espoused in Paragraph (a)(2). These judicial decisions invariably invoke section 653(b)(4) of the OSH Act, which provides that the Act is not to be construed so as to supersede "common law . . . with respect to injuries, diseases or death of employees arising out of, or in the course of, employment." *See* October 2011 Letter, *reprinted in* Br. for OSHA and the Dep't of Labor App'x (citing *United Steelworkers of Am., AFL-CIO-CLC v. Marshall*, 647 F.2d 1189, 1235-36 (D.C. Cir. 1980) ("[W]hen a worker actually asserts a claim under workmen's compensation law or some other state law, Section [653](b)(4) intends that neither the worker nor the party against whom the claim is made can assert that any OSHA regulation or the OSH Act itself *preempts* any element of the state law."); *Lindsey*, 480 F.3d at 210-11 ("[S]tate laws of general applicability. . . would generally not be preempted. . . . [T]he difference between [a] state products liability action and the legislated state standard . . . is critical. . . . [T]he [state] Products Liability Act fits squarely within those actions protected by [29 U.S.C. § 653(b)(4)]." (quotations omitted)); *Pedraza*, 942 F.2d at 53 ("There is a solid consensus that section [653](b)(4) operates to save state tort rules from preemption." (citations omitted)); February 2010 Letter (citing same cases); 77 Fed. Reg. at 17,694 (citing *Lindsey* and *Pedraza*); Br. for OSHA and the Dep't of Labor at 26-28, 37-39 (collecting cases). Thus, Paragraph (a)(2) reflects OSHA's understanding of the OSH Act based, in large part, upon judicial interpretations of the

OSH Act. Paragraph (a)(2) is not a legislative rule promulgated by the agency.

**B.** *Paragraph (a)(2) is Not Reviewable*

"Like agency policy statements, 'interpretative rules' that do not establish a binding norm are not subject to judicial review under the APA." EDWARDS, ELLIOTT, & LEVY, FEDERAL STANDARDS OF REVIEW at 161. The APA only provides for judicial review of "final agency action," 5 U.S.C. § 704; *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990), and interpretative rules or statements of policy generally do not qualify because they are not "finally determinative of the issues or rights to which [they are] addressed." EDWARDS, ELLIOTT, & LEVY, FEDERAL STANDARDS OF REVIEW 157 (2d ed. 2013) (citing *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin.,* 452 F.3d 798, 800 (D.C. Cir. 2006)).

Of course, if an agency issues a statement that is labeled an interpretative rule or a policy statement and it has all of the indicia of a final legislative rule, then the rule will be subject to review. *See, e.g.*, *Barrick Goldstrike Mines Inc. v. Browner*, 215 F.3d 45, 48 (D.C. Cir. 2000) (holding that an agency rule does not escape review under the APA merely because it is labeled an "informal" guideline); *Gen. Elec. Co. v. EPA*, 290 F.3d 377, 384-85 (D.C. Cir. 2002) (holding that a purported Guidance Document was a legislative rule, not a policy statement, and thus reviewable); *McLouth Steel Prods. Corp. v. Thomas,* 838 F.2d 1317, 1322 (D.C. Cir. 1988) (holding that a purported interpretive rule was in fact a legislative rule and thus subject to review). Likewise, "an interpretative rule is subject to review when it is relied upon or applied to support an agency action in a particular case." EDWARDS, ELLIOTT, & LEVY, FEDERAL STANDARDS OF REVIEW 161 (2d ed. 2013) (citing *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 399 (2008)). These authorities are inapposite here. OSHA has merely offered Paragraph (a)(2) as a guideline, not as a

legislative rule; and OSHA has not offered Paragraph (a)(2) in support of its position in any pending actions. Paragraph (a)(2) is therefore not subject to review.

**C.** *Paragraph (a)(2) is Not Subject to Notice and Comment Rulemaking Under the APA*

Notice and comment rulemaking procedures are required under the APA when substantive rules are promulgated, modified, or revoked. 29 U.S.C. § 655(b)(2), (b)(7); 5 U.S.C. § 553. Substantive or legislative rules are those that "grant rights, impose obligations, or produce other significant effects on private interests," *Batterton v. Marshall*, 648 F.2d 694, 701-02 (D.C. Cir. 1980) (citations omitted), or which "effect a change in existing law or policy." *Alcaraz v. Block*, 746 F.2d 593, 613 (9th Cir. 1984) (quotations omitted). Interpretative rules and policy statements are expressly excluded from the requirements of notice and comment rulemaking under the APA. *See* 5 U.S.C. § 553(b).

As noted above, OSHA has no authority to promulgate a rule with the force of law on the preemptive effect of the OSH Act and the agency never meant for Paragraph (a)(2) to have this effect. It is therefore clear that the agency was not required to employ notice and comment rulemaking before modifying the disputed paragraph.

**D.** *This Dispute is Not Ripe for Review*

The Article III case or controversy requirement prohibits courts from issuing advisory opinions on speculative claims. EDWARDS, ELLIOTT & LEVY, FEDERAL STANDARDS OF REVIEW 141 (2d ed. 2013) (citing *Blanchette v. Connecticut Gen. Ins. Corp. (Reg'l Rail Reorganization Act Cases),* 419 U.S. 102, 138 (1974)). ATRA's claim that the substance of Paragraph (a)(2) impermissibly exceeds the preemptive scope of the OSH Act does not present a concrete case or controversy ripe for

judicial review. *Id.* ("Even when an agency has taken final action, a court may refrain from reviewing a challenge to the action if the case is unripe for review." (citing *Toilet Goods Ass'n v. Gardner,* 387 U.S. 158 (1967))). A "ripeness issue normally arises in cases in which a regulated party faces the *threat* of future agency enforcement action." *Id.*; *Truckers United for Safety v. Fed. Highway Admin.*, 139 F.3d 934, 938 (D.C. Cir. 1998) ("to the extent that [petitioner] wishes to challenge the substance of the regulatory guidance, it must wait until the Administration actually applies it in a concrete factual situation").

In determining whether a dispute is ripe for review, courts consider "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner,* 387 U.S. 136, 149 (1967). *Toilet Goods* held that a challenge to a regulation allowing agency officials to suspend a company's certification if it denied inspectors access to facilities was unripe because the petitioners had not presented a scenario in which the agency had exercised this authority. The Court could not evaluate the regulation without specific context because it had "no idea whether or when such an inspection [would] be ordered and what reasons the [agency might] give to justify [any such] order." 387 U.S. at 163. The Court explained that "judicial appraisal . . . is likely to stand on a much surer footing in the context of a specific application of this regulation than could be the case in the framework of the generalized challenge." *Id*.

Paragraph (a)(2) does not carry the force of law on the preemptive effect of the OSH Act because OSHA lacks the legal authority to render dispositive decisions on preemption; Paragraph (a)(2) is subject to neither the requirements of notice and comment rulemaking nor judicial review because it is nothing more than an interpretative statement; and OSHA has not purported to rely on or apply Paragraph (a)(2) in support of an agency action in a concrete case; therefore, the present

challenge to Paragraph (a)(2) is, *a fortiori*, unripe for judicial review.

ATRA will suffer no legally cognizable hardship from this result. *Gardner* suggests that "hardship to the parties of withholding court consideration" might warrant review in a generalized challenge that is otherwise poorly suited for adjudication. *Id.* at 149. But the Court has explained that such hardship cannot be established when an agency's interpretative guideline does not have "adverse effects of a strictly legal kind." *Nat'l Park Hospitality Ass'n*, 538 U.S. at 809. *National Park Hospitality Ass'n* held unripe for review the National Park Service's "general statemen[t] of policy" on how the Contract Disputes Act applied to concession contracts in the national parks. Because the National Park Service lacked authority to promulgate legally binding rules interpreting the Contract Disputes Act, the disputed statement could not have legal effects "required for a showing of hardship." *Id.*

The simple point here is that it is impossible to review ATRA's challenge outside the context of a particular state tort action in which preemption is at issue. And the parties agree that a court, not OSHA, "must determine in each particular case whether there is an applicable federal safety standard and whether a state requirement, such as a common law obligation, makes it impossible for parties to comply with federal law." Br. of Pet'r at 46-47; *accord* Br. for OSHA and the Dep't of Labor at 19 ("[A] state law must yield when there is a conflict between federal and state law.").

"In sum, we find it too speculative whether the problem [ATRA] presents will ever need solving; we find the legal issues [ATRA] raises not yet fit for our consideration, and the hardship to [ATRA] of biding its time insubstantial. Accordingly, we agree with [OSHA] that this matter is not ripe for adjudication." *Texas v. United States*, 523 U.S. at 302.

### III.    CONCLUSION

For the foregoing reasons, we deny ATRA's petition for review.

*So ordered.*

### ENDNOTES

[1] *Available at* OSHA Website, Standard Interpretations (Archived), Part 1926, *Safety and Health Regulations for Construction*, https://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=INTERPRETATIONS&p_id=20702.

[2] *Available at* OSHA Website, Standard Interpretations, 1996, *Guidelines for Workplace Violence Prevention Programs for Night Retail Establishments*, https://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=INTERPRETATIONS&p_id=22281.

[3] *Available at* OSHA Website, Standard Interpretations, 2007, *Employer Liability and Payment Requirements for Prescription Protective Eyewear*, https://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=INTERPRETATIONS&p_id=25893.

[4] *Available at* OSHA Website, Standard Interpretations, 2007, *Clarification of OSHA's Position on Preemption Precluding State Court Findings with Regard to Defective NIOSH-Certified Respirators*, https://www.osha.gov/pls/oshaweb/owadisp.show_document?p_table=INTERPRETATIONS&p_id=28049.